Austin K. **HENRY**, Appellant,

v.

**IOWA–ILLINOIS GAS & ELECTRIC CO.**, Appellee.

93–1315.

Supreme Court of Iowa.

Sept. 21, 1994.

Greg A. Egbers, Vicki L. Seeck, and Jean Z. Dickson of Betty, Neuman & McMahon, Davenport, for appellant.

Thomas N. Kamp and Carole J. Anderson of Lane & Waterman, Davenport, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

The basic question here is whether nonmedical homemaking services are compensable as "nursing" services under Iowa Code section 85.27 (1991) of the Workers' Compensation Act. The district court, affirming the decision of the industrial commissioner, concluded that such services were not compensable. We affirm.

I. *Background facts and proceedings.* On January 8, 1982, petitioner Austin K. Henry suffered severe internal and electrical burned skin injuries when he came into contact with a high voltage power line. Henry suffered the injuries while working as a lineman apprentice for his employer, respondent Iowa–Illinois Gas & Electric Co. ("Iowa–Illinois"). Thereafter, Henry underwent extensive skin grafts and surgeries, including amputations of his legs above the knee.

Petitioner has asserted a claim under section 85.27 against respondent employer for several services performed for him by his mother and sister since the surgeries.

A. A treating physician recommended in 1982 that Henry go to a nursing home for assistance. Instead, however, he returned home where his mother cared for him. She changed his bandages, gave him physical therapy, and performed basic housekeeping functions such as cooking and cleaning.

Iowa–Illinois also participated in helping Henry after the accident. It provided an electric wheelchair, installed wheelchair ramps and a special shower for Henry at his parents' home, and equipped a van for Henry to operate himself.

By February 1984, Henry's condition had improved substantially. As a result, Henry returned to work full time for Iowa–Illinois and continues to work as its employee today. Henry also continues to reside at his parents' house, but he pays his parents rent for his room within the home. Among other personal services Henry may now perform for himself, Henry is able to shower and shave independently.

As Henry's condition has improved, the nature of his mother's services has also changed. In 1984 Henry's mother was able to return to work as the manager of a restau-

rant, where she began working full time in January 1986. Since 1985 Henry's mother's aid to Henry has decreased to occasionally helping Henry dress by buttoning and pinning his clothing, preparing meals when Henry does not cook himself or eat out, laundering his clothing, cleaning his room, and shoveling snow at the home.

In a list of the estimated time Henry's mother spent in allegedly providing services for him over a thirty-one day period, each day's itemization includes "daily general chores," defined as including "making of bed, gathering of soiled clothing, cleaning of my bathroom and bedroom, etc." The list also includes preparing two meals each day, even though Henry is able to prepare some meals and eats out occasionally. In addition, the list includes time Henry's father spent on wheelchair, van, lift, and ramp maintenance and repairs.

Henry's mother also testified that she paid $50 per week to Beverly Sanders, one of Henry's sisters, to assist him three days a week for about a year sometime around 1986. She testified to providing dressing help, occasionally preparing meals, and salting or shoveling the driveway on snowy days.

Initially, Henry received workers' compensation temporary total disability or healing period benefits for the period of time he was off work beginning on January 9, 1982 through February 19, 1984. He returned to work full time on February 20, 1984.

On September 27, 1984, claimant filed a petition for review-reopening before the industrial commissioner seeking additional benefits. Although Henry and his mother testified at the hearing on that petition, they failed to raise any issue as to benefits for nursing care under Iowa Code section 85.27 as presently asserted.

Henry appealed the deputy industrial commissioner's review-reopening decision, which set his permanent partial disability award. The industrial commissioner issued an appeal decision which affirmed the deputy's decision. Henry petitioned the district court for judicial review of that decision, but did not appeal from the December 10, 1987 district court ruling, which affirmed the commissioner.

B. On November 30, 1988, Henry filed the present petition before the industrial commissioner seeking medical benefits for "practical nursing services performed by claimant's mother from the date of the injury to present." Iowa–Illinois filed a motion for partial summary judgment, contesting payment for services provided by claimant's mother from the date of the injury to the close of the record at the 1985 hearing on the petition for review-reopening. Iowa–Illinois contended that all issues not raised by the time of that hearing were waived or barred.

On February 22, 1991, a deputy industrial commissioner filed an arbitration decision that concluded that because Henry failed to petition for home care benefits until November 30, 1988, the statute of limitations (Iowa Code section 85.26(1)) barred him from recovery for such benefits through November 30, 1985. With respect to services performed by his mother and sister after that date, however, the deputy concluded that Henry was entitled to benefits under section 85.27.

Iowa–Illinois appealed and Henry cross-appealed to the industrial commissioner, who concluded that the services Henry's family provided him were in the nature of home-making services, which were not nursing services compensable under section 85.27. Thus, the industrial commissioner found in favor of Iowa–Illinois on the merits and did not reach the statute of limitations issue.

Henry filed a petition for judicial review in district court, which affirmed the industrial commissioner's decision.

Henry appealed to this court.

Our review is for correction of errors at law. Iowa R.App.P. 4; see Foods, Inc. v. Iowa Civil Rights Comm'n, 318 N.W.2d 162, 164–65 (Iowa 1982).

II. *Compensation for services.* Henry contends that the services provided by his family constitute compensable "nursing" services under Iowa Code section 85.27.

Iowa Code section 85.27 provides in pertinent part:

*The employer,* for all injuries compensable under this chapter or chapter 85A, *shall furnish reasonable* surgical, medical, dental, osteopathic, chiropractic, podiatric, physical rehabilitation, *nursing,* ambulance and hospital *services* and supplies therefor and shall allow reasonably necessary transportation expenses incurred for such services.

(Emphasis added.)

We agree with the industrial commissioner that the services that Henry's family performed for him fall outside of the scope of "nursing" services contemplated by the statute.

The legislature failed to define the scope of the term "nursing." Therefore, to determine the proper meaning of the term, we look to its ordinary meaning and the context in which the legislature drafted it. *See Leuchtenmacher v. Farm Bureau Mut. Ins. Co.,* 461 N.W.2d 291, 293 (Iowa 1990).

The statute includes nursing as one of many specialized professional services, such as surgical, medical, dental, ambulance and hospital, for which a claimant can receive compensation. Thus, we believe "nursing" denotes professional services "grouped with [the services of] physicians and surgeons and not with [the services of] cooks, chambermaids, etc., employed in purely ministerial and administrative functions." *See Volk v. City of New York,* 259 A.D. 247, 254, 19 N.Y.S.2d 53, 61, *rev'd on other grounds,* 284 N.Y. 279, 30 N.E.2d 596 (1940).

Although Henry's family apparently has performed more services for him since his accident than they did before, those services have consisted almost entirely of household chores, not nursing as contemplated under section 85.27.

As stated by the industrial commissioner, the services provided to Henry did not require medical training or licensure. Also, neither person who provided the services was a registered nurse or licensed practical nurse.

Petitioner cites *Perez v. Pennsuco Cement & Aggregates,* 474 So.2d 293 (Fla.Dist.Ct. App.1985), *review denied,* 482 So.2d 349 (Fla. 1986), in support of his claim that his family's

services are compensable. Because *Perez* was decided under a provision of Florida's workers' compensation benefits statute, Florida Stat. section 440.13 (1971), that did not use the term "nursing," it provides at best analogous authority. That statute allowed recovery for extraordinary services. *Id.* But even assuming the *Perez* case's reasoning applies here, we believe the relevant services provided by the Henry family were not "extraordinary." After 1984, the family ceased bathing, dressing, and shaving Henry. He then did those procedures himself. The services for which compensation is sought do not go beyond ordinary household or homemaking services.

Petitioner's reliance on *Smyers v. Workers' Compensation Appeals Bd.,* 157 Cal.App.3d 36, 203 Cal.Rptr. 521 (1984), is similarly misplaced. In *Smyers,* the court held that workers' compensation claimants were entitled to reimbursement for the costs of housekeeping services "when there is a demonstrated medical need." *Id.* at 42, 203 Cal.Rptr. at 523. Again, this decision, applying the California workers' compensation statute, Cal. Labor Code section 4600 (West 1977), did not involve an interpretation of the term "nursing." Yet even if we adopted the *Smyers* rule, it would afford Henry no compensation because he failed to demonstrate a medical need for his family's services. Here, Henry produced no medical testimony or other medical evidence after 1982 that he required "nursing" services, especially after he returned to work full time in 1984.

Other jurisdictions are in accord. *See, e.g., Collins by Collins v. Waterford Township Sch. Dist.,* 118 Mich.App. 798, 325 N.W.2d 585, 587 (1982) (compensation allowed only if beyond "ordinary [spousal] duties"); *Spiker v. John Day Co.,* 201 Neb. 503, 270 N.W.2d 300, 309 (1978) (services must be medical in nature) (Brodkey, J., concurring); *Rendon v. Texas Employers Ins. Ass'n,* 599 S.W.2d 890, 895 (Tex.Civ.App.1980) (services must be beyond contemplation of marital or family relationship); *Warren Trucking Co. v. Chandler,* 221 Va. 1108, 277 S.E.2d 488, 493 (1981) (services must be medically necessary); *cf.* 2 Arthur Larson, *The Law of Workers' Compensation* § 61.13(d)(4), at 10–967 (1993)

(While "attendance" in the nursing sense is [compensable] ..., a line has been drawn between nursing attendance and services that are in essence housekeeping.).

We also note that Henry admits that prior to his 1988 petition he did not request the employer to provide "nursing" services to him. Accordingly, the employer could not direct the care as the employer is entitled to do under another portion of section 85.27.

We therefore agree with the industrial commissioner and the district court that Iowa Code section 85.27 provides no compensation for the services Henry received from his family as claimed here.

III. *Disposition.* We affirm the judgment of the district court and the decision of the industrial commissioner.

**AFFIRMED.**